# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DANIEL GOMEZ, <br><br> Plaintiff, <br><br> v. <br><br> LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al., <br><br> Defendants. | Case No. 2:16-cv-00086-APG-VCF <br><br> **ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** <br><br> (ECF Nos. 26, 27) |

Plaintiff Daniel Gomez sues Detective Brian Santarossa and the Las Vegas Metropolitan Police Department (Metro) for the events surrounding his arrest and detention before the criminal charges against him were voluntarily dismissed. He alleges that Santarossa is liable under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights, and under state law for false imprisonment, malicious prosecution, and intentional infliction of emotional distress (IIED). He claims that Metro is liable under § 1983 for maintaining policies, customs, or practices that violated his constitutional rights.

Detective Santarossa and Metro separately move for summary judgment. Because Detective Santarossa had probable cause to arrest Gomez and there is no evidence to support Gomez's IIED claim, I grant summary judgment in Santarossa's favor. And because Gomez does not have a viable § 1983 claim against Santarossa and thus cannot show a constitutional violation, I also grant Metro's summary judgment motion.

**I.     BACKGROUND**

   **A. The Sexual Assault Allegations and Santarossa's Investigation**

On January 15, 2014, Ashley McQuistion went to the Henderson Police Department (HPD) and alleged that Gomez sexually assaulted her at their workplace, Grand-Adventures.[1] HPD recorded the allegations and called Metro officers to inform them that McQuistion reported

---

[1] ECF No. 26-2 at 3.

a sexual assault that occurred in Las Vegas.[2] The officers called Detective Santarossa and told him that McQuistion was being transported to University Medical Center (UMC).[3]

Santarossa and another detective met McQuistion at UMC and took her recorded statement.[4] McQuistion identified Gomez as her assailant.[5] She told Santarossa the assault had taken place at work at around 11:00 a.m. in an area where there were no surveillance cameras and no one else was present. She gave specific details about the assault.[6] She told Santarossa that after the assault, Gomez came back into her area of the office and, among other things, told her not to tell his wife or her husband.[7] She then texted a friend at about 11:35 a.m., who told her to leave and take pictures of any marks on her skin from the assault.[8] She took pictures of marks on various parts of her body and later sent them to Santarossa.[9]

After the interview, McQuistion had a Sexual Assault Nurse Examination (SANE exam).[10] During the exam, McQuistion's clothes were taken and the areas where Gomez allegedly touched her were swabbed.[11] McQuistion testified that she did not have her pelvic area swabbed because the assault did not involve vaginal penetration.[12] A contusion to her left femur

---

[2] *Id.* at 3, 5–7.

[3] *Id.* at 7, 20.

[4] *Id.* at 21; *see generally id.* at 44–59 (McQuistion's recorded statement).

[5] *Id.* at 45.

[6] *See id.* at 45–46.

[7] *Id.* at 46.

[8] *Id.*

[9] *Id.* at 46, 53.

[10] *Id.* at 23.

[11] *See* ECF No. 26-3 at 3–8 (excerpts of SANE report).

[12] ECF No. 26-1 at 71. McQuistion alleged that Gomez groped her and partially penetrated her rectum through her stretchy leggings with his finger. The SANE exam indicates that oral, vaginal, cervical, and rectal swabs were taken. ECF No. 26-3 at 8.

was observed where her left leg had been pushed against a desk.[13] The exam did not reveal any additional evidence of sexual assault.[14]

Santarossa called Gomez later the same day and told him that he was investigating McQuistion's allegations.[15] Gomez told Santarossa that he was going to contact his lawyer.[16] That evening, Gomez sent McQuistion text messages that said, "Omg really u gonna say I fuckin assaulted u after we fucked . . . ur a dirty filthy bitch," "I just told Monique n we r divorcing thanks," and "U might as well tell puffy we fucked tooo since I told my wife."[17] Gomez later testified that he sent those texts because he thought McQuistion would respond by calling Gomez a liar and saying that they did not have sex—if she did, then he could show those texts to his wife and boss to prove that they were not having an affair.[18] McQuistion called Santarossa the next day and told him about the text messages, and later emailed him screenshots of the texts.[19] Santarossa asked McQuistion if she had sex with Gomez, and she responded that she did not.[20] She also told Santarossa that she had been swabbed by the SANE nurse and that the exam should reveal no evidence of sexual activity.[21]

McQuistion also exchanged text messages with Kristin, another Grand-Adventures coworker, soon after the incident. McQuistion asked Kristin if Gomez had ever sexually harassed her, and Kristin responded that Gomez had texted her "gross comments," and when they worked

---

[13] ECF No. 26-3 at 6.
[14] ECF No. 26-2 at 23.
[15] ECF No. 26-1 at 27.
[16] *Id.* at 28.
[17] ECF No. 26-3 at 10–11.
[18] ECF No. 26-1 at 29. Santarossa did not know Gomez's alleged motive for sending these texts because Gomez would not speak to him about the accusations.
[19] *Id.* at 64.
[20] ECF No. 26-2 at 29.
[21] *Id.* at 33.

alone together he "would stand all close to me makes (sic) comments how sexy I was or comments about my body."[22] McQuistion forwarded those messages to Santarossa.[23]

**B. Santarossa's Declaration**

Santarossa prepared a declaration of warrant/summons which sought an arrest warrant for Gomez.[24] The declaration disclosed that McQuistion told officers that Gomez had sexually assaulted her, and paraphrased her recorded statement concerning the assault. He reported that he contacted Gomez the day of the alleged assault to schedule an interview, but two days later Gomez's attorney told Santarossa that Gomez would not speak to him.[25]

Santarossa also discussed Gomez's texts to McQuistion insinuating that they had sex, and McQuistion's representations that they did not have sex and the SANE exams would confirm it. Santarossa did not say whether or not the SANE exams did, in fact, confirm McQuistion's representations. He also mentioned the texts between Kristin and McQuistion discussing Gomez. He stated that those texts "did not mention any criminal act."[26] Santarossa attached to his declaration the photos and text messages that McQuistion sent him. He did not state whether the SANE exam revealed any additional evidence of sexual activity. Santarossa submitted the declaration and evidence to the District Attorney (DA) on February 8, 2014.

**C. Gariglio's Investigation and Police Report against McQuistion**

Darryl Gariglio was the owner of Grand-Adventures and employed Gomez and McQuistion. McQuistion texted Gariglio about the alleged assault shortly after it happened and told him that she had left the workplace.[27] Gariglio contacted Gomez and asked him if anything

---

[22] ECF No. 26-3 at 13–14.

[23] ECF No. 26-1 at 64.

[24] ECF No. 26-3 at 24–26 (declaration).

[25] *Id.*

[26] *Id.*

[27] *Id.* at 40.

happened between Gomez and McQuistion. Gomez replied that nothing had happened, and Gariglio told him to "save his receipts" so that he could prove where he was.[28]

Between January 16 and February 8, 2014, Gariglio conducted his own investigation into McQuistion's accusations.[29] He talked to other coworkers, reviewed text messages, phone logs and receipts, and spoke with employees at neighboring businesses about Gomez's and McQuistion's movements on the date of the alleged assault.[30] His investigation showed, among other things, that McQuistion was at Arby's at around 11 a.m., she got back to the office at "roughly 11:17" a.m., and Gomez left for AutoZone at 11:29 a.m.[31]

Gariglio also investigated any motives for McQuistion to falsely accuse Gomez of sexual assault. Gariglio noted that McQuistion had been overpaying herself vacation time, and was afraid of losing her job. Gariglio later testified that he had a meeting with McQuistion on January 6, 2014, about the overpayments where he agreed to allow her to repay the money.[32] He intended to terminate her employment, but he had not shared that intent with McQuistion.[33] Gariglio gave all of the information he collected to Gomez.[34] He did not share it with Santarossa or anyone else at Metro.[35]

About a week after Santarossa forwarded the case against Gomez to the DA, Gariglio filed a police report alleging that McQuistion had stolen from Grand-Adventures by overpaying herself vacation pay.[36] The report was given to a property crimes detective and Santarossa was not made aware of it until months later.[37]

---

[28] ECF No. 26-1 at 25.
[29] *See* ECF No. 26-3 at 41.
[30] *See generally id.* at 47–60.
[31] ECF No. 26-1 at 36.
[32] ECF No. 26-3 at 65.
[33] *Id.* at 61.
[34] ECF No. 26-1 at 36.
[35] ECF Nos. 26-3 at 53–56; 26-1 at 35–36.
[36] ECF No. 26-3 at 66.
[37] ECF No. 26-2 at 25.

### D. Criminal Proceedings against Gomez

After Santarossa submitted his declaration and evidence, the DA filed a criminal complaint charging Gomez with one count of battery with intent to commit sexual assault, one count of sexual assault, and one count of open or gross lewdness.[38] The DA reviewed the declaration, approved it, and submitted a request for an arrest warrant.[39] A judge issued the arrest warrant on February 19, 2014.[40]

About a week later, Gomez turned himself in after his attorney advised him that there was a warrant for his arrest.[41] Gariglio posted bond for Gomez the next day, and Gomez was released to limited house arrest.[42] Gomez was released from house arrest a couple of months later.[43] At Gomez's preliminary hearing in August, McQuistion testified and Gomez did not. No evidence was put on by the prosecution that was not contained in Santarossa's declaration. The court determined that the charges were supported by probable cause and Gomez was bound over for trial.[44]

At a hearing in April 2015, Gomez's attorney advised the court that the DA had filed criminal charges against McQuistion for her alleged theft of vacation pay.[45] A month later, the State advised the court that the Attorney General's office was taking over Gomez's case due to the conflict.[46] In August 2015, the Attorney General filed a notice of voluntary dismissal.[47] The

---

[38] ECF No. 26-3 at 28.
[39] ECF No. 26-4 at 2.
[40] *Id.* at 3.
[41] ECF No. 26-1 at 31.
[42] ECF No. 26-4 at 7–14.
[43] ECF No. 26-1 at 33.
[44] *See* ECF No. 26-4 at 16–47 (preliminary hearing transcript).
[45] ECF No. 26-5 at 19.
[46] *Id.* at 21.
[47] *Id.* at 26–28.

notice did not indicate a basis for dismissal of the charges and the Attorney General reserved the right to file charges later.[48]

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[49] A fact is material if it "might affect the outcome of the suit under the governing law."[50] An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[51]

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[52] The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial.[53] I view the evidence and reasonable inferences in the light most favorable to the non-moving party.[54]

### B. Discussion

Gomez alleges that Santarossa violated his constitutional rights to be free from unreasonable search and seizure, unlawful arrest, and malicious prosecution. He also brings state law claims for malicious prosecution, false imprisonment, and IIED. Santarossa moves for judgment on all claims. Metro also moves for judgment on Gomez's claim against it under *Monell v. Department of Social Services of the City of New York*.[55]

---

[48] *Id.*

[49] Fed. R. Civ. P. 56(a), (c).

[50] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[51] *Id.*

[52] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[53] *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).

[54] *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

[55] 436 US. 658 (1978).

Gomez timely filed a response to Metro's motion. Metro replied, and Santarossa filed a notice of non-opposition to his motion. Three weeks after it was due, Gomez filed a response to Santarossa's motion. He clarified that his response to Metro's motion was "directed toward both motions" but the "filing of a non-opposition on Santarossa's motion prompted a more detailed separate opposition."[56] He states that this later response is "hereby incorporated and/or supplemented to the opposition previously filed."[57] I decline to consider Gomez's "supplement" to his timely filed opposition.[58] Instead, I will treat his response to Metro's motion as a response to Santarossa's motion as well, as Gomez intended.[59]

### 1. Due Process Claim

Gomez claims that Santarossa violated his "due process rights." Coupled with the allegation that **"Santarossa deliberately chose to not preserve exculpatory evidence from McQuistion's phone"** when he interviewed her at UMC, I interpret this as a claim brought pursuant to *Arizona v. Youngblood*.[60] Under *Youngblood*, a police officer's failure to preserve or collect potentially exculpatory evidence violates an accused's due process rights only if the officer acted in bad faith when he failed to collect or preserve it.[61] "The presence or absence of bad faith . . . turn[s] on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."[62] To show bad faith, a plaintiff must offer "specific, non-conclusory factual allegations that establish improper motive."[63]

Gomez contends that Santarossa should have seized McQuistion's phone to find evidence demonstrating that "McQuistion was not present at her place of employment when she alleged the

---

[56] ECF No. 42 at 2.

[57] *Id.*

[58] Supplements are prohibited without leave of court. Local Rule 7-2(g). Gomez did not seek leave to file a supplement to his opposition.

[59] Even if I were to consider the second opposition, I would not come to any different results.

[60] *Arizona v. Youngblood*, 488 U.S. 51 (1988).

[61] *See Cunningham v. City of Wenatchee*, 34 F.3d 802, 812 (9th Cir. 2003).

[62] *Youngblood*, 488 U.S. at 57; *United States v. Silva*, 714 F.3d 1168, 1172 (9th Cir. 2013).

[63] *Cunningham*, 34 F.3d at 812.

incident occurred" or any other evidence that may have been exculpatory.[64] But Gomez cannot demonstrate any reason why Santarossa should have expected exculpatory evidence to be on McQuistion's phone. McQuistion was cooperating with the investigation and sent Santarossa information from her phone that was relevant to the assault. Gomez refused to speak to Santarossa, so he did not pass along his and Gariglio's theory that the timeline of McQuistion's allegations did not add up. Gariglio did not inform the police of these theories either.

Even if Gomez could show that Santarossa failed to preserve exculpatory evidence, he cannot show bad faith. He offers no evidence raising a genuine dispute that Santarossa had an improper motive to not search McQuistion's phone. The most he provides is a vague, unsupported allegation that Santarossa had a "personal interest" in the investigation because "Santarossa and his spouse had a personal relationship with Plaintiff and his spouse."[65] But there is no evidence that Santarossa and Gomez had any relationship.

Rather, it appears that Gomez meant to say that a personal relationship existed between McQuistion and Santarossa's wife. The two women went to high school together and were friends on Facebook.[66] However, the record reflects that (1) Santarossa did not know that his wife knew McQuistion, (2) McQuistion did not know that her Facebook friend was Santarossa's wife, and (3) both parties found out about the connection only when Santarossa's counsel in this case inquired about it, long after Santarossa's investigation had ended.[67] There are no other allegations of bad faith or improper motive. Because Gomez cannot show specific factual allegations that establish an improper motive, I grant summary judgment in Santarossa's favor on the due process claim.

---

[64] ECF No. 1 at 4.

[65] ECF No. 39 at 3 (saying Gomez was a "friend and acquaintance").

[66] ECF No. 26-1 at 54.

[67] ECF Nos. 26-1 at 55; 26-2 at 20.

## 2. Remaining § 1983 Claims

Gomez claims that Santarossa unlawfully arrested and maliciously prosecuted him. These allegations hinge on the assertion that Santarossa did not have probable cause to support his warrant declaration.[68]

"Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed."[69] The "relevant inquiry is what the agents knew, collectively, at the time they arrested" the plaintiff.[70] To establish probable cause, an officer "may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses."[71] "A sufficient basis of knowledge is established if the victim provides facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator."[72] "Once probable cause to arrest someone is established . . . a law enforcement officer is not 'required by the Constitution to investigate independently every claim of innocence[.]'"[73]

Probable cause existed to arrest Gomez. McQuistion unequivocally identified Gomez as her assailant and provided sufficiently specific details of the assault to reasonably cause Santarossa to believe that Gomez had committed the crime. But he did not rely solely on her verbal account of the assault. McQuistion also showed Santarossa pictures she took of the marks

---

[68] *See Dubner v. City and Cty. of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001) ("A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification."); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) (To prevail on a malicious prosecution claim under § 1983, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right."). Gomez's complaint also alleges unreasonable search and seizure. There is no evidence of a separate search warrant issued against him, so I treat that claim as redundant of his unlawful arrest claim.

[69] *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009).

[70] *United States v. Collins*, 427 F.3d 688, 691 (9th Cir. 2005).

[71] *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979 (9th Cir. 2003) (quotation omitted).

[72] *Id.* (quotation omitted).

[73] *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003) (citing *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979)).

and bruises she received during the assault. Santarossa also had copies of the text messages Gomez sent McQuistion on the evening of the assault, and copies of text messages between McQuistion and another coworker discussing Gomez's past harassment. These facts are sufficient to support probable cause for Gomez's arrest.

Gomez implies that Santarossa submitted false information and omitted exculpatory evidence in the warrant declaration, negating probable cause. A plaintiff alleging that a warrant is deficient on this basis "must make a substantial showing of deliberate falsehood or reckless disregard for the truth" and "establish that, but for the dishonesty [or omission], the challenged action would not have occurred."[74] The "inquiry into whether the false statements or omissions were material [to the probable cause determination] is a purely legal question."[75] False statements and omissions are material if "the affidavit, once corrected and supplemented, would not have provided a magistrate judge with a substantial basis for finding probable cause."[76]

Gomez contends that Santarossa deliberately omitted (1) "the fact that Gomez was at Autozone . . . [when] McQuistion alleged the incident occurred"; (2) "the fact that McQuistion later changed the time that the alleged incident occurred, but that the revised time was also impossible because McQuistion was at Arby's"; (3) the SANE exam did not find any evidence of sexual battery; and (4) McQuistion fraudulently took extra vacation pay from Grand-Adventures and that her "job was in jeopardy."[77] Gomez also alleges that McQuistion lied about the tests taken during her SANE exam, and because she lied she was an unreliable witness, and therefore Santarossa deliberately included her false statements in the declaration.[78] Lastly, Gomez faults

---

[74] *Hervey v. Estes*, 65 F.3d 784, 788–89 (9th Cir. 1995); *see also Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir. 1997) (finding that the same standard applicable to deliberate falsehoods is applicable to deliberate omissions).

[75] *Chism v. Washington St.*, 661 F.3d 380, 389 (9th Cir. 2011) (citation omitted).

[76] *Id.* (quotation omitted).

[77] ECF No. 1 at 4–5.

[78] *Id.* at 5.

Santarossa for choosing not to interview "any of the purported witnesses to the alleged incident."[79]

Gomez presents no evidence to demonstrate a deliberate falsehood or omission in Santarossa's declaration. Santarossa had no knowledge of Gomez's and Gariglio's self-guided investigation and their conclusions that Gomez was at Autozone and McQuistion was at Arby's when McQuistion alleged the assault occurred. Gomez refused to speak to Santarossa, and Santarossa was given no reason to interview Gariglio and discover his theories of the case. Even if Santarossa stated in his declaration that McQuistion was at Arby's until "roughly 11:17" a.m. and Gomez left for AutoZone at 11:29 a.m., a neutral and detached magistrate judge would still find probable cause to issue the warrant. Gomez's timeline still leaves approximately 15 minutes where Gomez and McQuistion were alone at the office. McQuistion's memory of the events happening sometime between 11:00 a.m. and 11:35 a.m. are consistent with Gomez's timeline.[80]

Santarossa's failure to include results from the SANE report was also not deliberate. The description of the alleged assault included in the declaration demonstrated that the assault was not of the type to leave behind notable physical evidence that a SANE exam would find. Santarossa did not include the results in his declaration because he believed they would not affect probable cause. Even if I found that Santarossa deliberately omitted the conclusion that the SANE exam revealed no additional evidence of assault, that information is immaterial to the neutral judge's probable cause determination. Given the nature of the assault, a reasonable person would understand that a SANE exam would not yield any evidence even if the assault did, in fact, occur.

Gomez's allegation that Santarossa deliberately omitted McQuistion's alleged theft of vacation pay from Grand-Adventures is also unpersuasive. First, Santarossa did not know of those allegations until months after he submitted his declaration to the DA and stopped investigating the assault. Second, he was given no reason to investigate McQuistion's workplace

---

[79] *Id.* at 4.

[80] Plus, McQuistion never "changed the time" that the alleged assault occurred. She consistently stated that it happened at around 11 a.m. and she had texted her friend after the assault at approximately 11:35 a.m.

conduct. Neither Gariglio nor Gomez, despite having access to this information, shared any of it with Santarossa. An officer cannot investigate a motive that he did not know existed. And even if McQuistion's alleged theft was included in the declaration, it would not affect a judge's probable cause determination. McQuistion did not know that Gariglio intended to fire her or take criminal action against her for her transgressions. And even if she did, Gomez fails to show how any of those issues with Gariglio would provide a motive for bringing false allegations against Gomez.

Gomez also faults Santarossa for not interviewing "witnesses" to the assault. But McQuistion told Santarossa that only she and Gomez were in the office when the assault occurred, and that the office did not have surveillance cameras. Gomez does not specify what other "witnesses" Santarossa should have interviewed. To the extent he is referring to Gariglio, there was no evidence available to Santarossa at the time to indicate the need to interview Gariglio. Gariglio was not present during the alleged assault and Santarossa had no reason to believe that he would have any additional insight into the allegations.

Finally, Gomez claims that McQuistion lied when she told Santarossa that the SANE exam would provide proof that she did not have sex with Gomez. Therefore, she was an unreliable witness and Santarossa deliberately included her false statements in his declaration, negating probable cause. Gomez presents no evidence to show that McQuistion intentionally lied about what she believed the SANE exam would reveal. And Santarossa was not aware that McQuistion's SANE exam did not include the evidence that McQuistion said it would. Nor did he represent in his declaration that the SANE exam did, in fact, support McQuistion's comments. Santarossa included Gomez's text messages indicating that Gomez and McQuistion had consensual sex because it was potentially exculpatory. Even if Santarossa had stated that the SANE exam did not include tests that could prove whether or not McQuistion and Gomez had sex, that information would not alter the probable cause determination. The absence of that evidence does not demonstrate that McQuistion was lying about what she thought the exam would show.

Because Santarossa's declaration was supported by probable cause and did not deliberately omit or misrepresent any evidence, Gomez's § 1983 claims for unlawful arrest and malicious prosecution fail. So I grant Santarossa's summary judgment motion on those claims. And because Gomez's state law malicious prosecution and false imprisonment claims also hinge on probable cause,[81] I grant judgment in Santarossa's favor on those claims as well. Further, because Gomez cannot show that Santarossa inflicted any constitutional injury, I also grant Metro's summary judgment motion on Gomez's *Monell* claim.[82]

### 3. Intentional Infliction of Emotional Distress (IIED)

Under Nevada law, an IIED claim has three elements: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) severe or extreme emotional distress suffered by the plaintiff; and (3) actual or proximate causation."[83] To be extreme and outrageous, conduct must be "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community."[84] "[P]ersons must necessarily be expected and required to be hardened . . . to occasional acts that are definitely inconsiderate and unkind."[85] Also, "[t]he less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress."[86]

Gomez has presented no evidence to show that Santarossa's conduct was extreme or outrageous, or that he acted with the intent to cause, or reckless disregard for the risk of causing,

---

[81] *LaMantia v. Redisi*, 38 P.3d 877, 888 (Nev. 2002) (finding that malicious prosecution under Nevada law requires a showing that the defendant lacked probable cause to initiate the prosecution); *Jordan v. State ex. rel. Dep't of Motor Vehicles & Pub. Safety*, 110 P.3d 30, 48 (Nev. 2005) (stating that "false imprisonment arising from a false arrest occurs when the claimant's liberty is restrained under the probable imminence of force without any legal cause or justification"), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670 (Nev. 2008).

[82] *See Yousefian v. City of Glendale*, 779 F.3d 1010, 1016 (9th Cir. 2015) ("[M]unicipalities cannot be held liable when the individual police officer has inflicted no constitutional injury.").

[83] *Jordan*, 110 P.3d at 52.

[84] *Kahn v. Morse & Mowbray*, 117 P.3d 227, 237 n.18 (Nev. 2005) (internal quotation marks and citations omitted).

[85] *Maduike v. Agency Rent-a-Car*, 953 P.2d 24, 26 (Nev. 1998) (internal quotation marks and citations omitted).

[86] *Chowdhry v. NLVH, Inc.*, 851 P.2d 859, 483 (Nev. 1993).

emotional distress. He investigated McQuistion's allegations, gathered evidence, and attempted to interview Gomez before submitting his case to the DA. A neutral judge separately determined that there was probable cause for Gomez's arrest. Santarossa did not deliberately omit or misrepresent any evidence in his declaration in support of an arrest warrant. He harbored no animosity or ill will toward Gomez that would cause him to act with the intent to cause him harm. There is no evidence demonstrating that Santarossa's conduct during his investigation was outside all possible bounds of decency. Because Gomez cannot satisfy the first element of his IIED claim (or even show a genuine dispute of fact), I grant summary judgment in Santarossa's favor.

**C. Gomez's Request to Deny the Motions and Re-Open Discovery**

The instant motions for summary judgment were filed on July 26, 2017. Gomez's prior counsel, Cal Potter, withdrew from this case in October 2017 because he was diagnosed with terminal cancer. Gomez's current counsel filed a notice of appearance on January 9, 2018. The parties stipulated to extend the deadline for response to the summary judgment motions until February 16, 2018. On that date, Gomez's counsel filed his response to Metro's motion.

In that response, Gomez's counsel argues that the motions for summary judgment are premature. He states that he received Mr. Potter's file, but is "still going through his notes and strategy . . . while also reviewing the matter for settlement potential."[87] He claims that there "may be additional information not yet known to Plaintiff and counsel which may be discovered."[88] Given the underlying circumstances, Gomez's counsel requests that I deny the pending motions and "permit discovery or take the matter under advisement to allow possible settlement negotiations to proceed between the parties."[89] Metro opposed this request.

Discovery closed on May 12, 2017, long before Mr. Potter moved to withdraw from the case. Discovery appears to have been thorough: written discovery was exchanged, and

---

[87] ECF No. 39 at 5.
[88] *Id.*
[89] *Id.* at 6.

depositions of Santarossa, Gomez, McQuistion, and Gariglio were conducted.  While I am empathetic to Mr. Potter's passing, I find no basis to reopen discovery.

Further, both summary judgment motions were filed after discovery had closed.  Gomez's counsel had approximately forty days to review Mr. Potter's notes and prepare responses to the motions.  He never asked for additional extensions of time to respond, nor did he move to stay the case while he acquainted himself with the material.  And the parties have had sufficient time to attempt a settlement (or to stipulate to a stay while they negotiated).  Under these circumstances, I cannot find any basis to deny the motions as premature.

### III.  CONCLUSION

IT IS THEREFORE ORDERED that the defendants' respective motions for summary judgment **(ECF Nos. 26 and 27) are GRANTED.**  The clerk of court is directed to enter judgment in favor of all defendants and against plaintiff.

DATED this 15th day of March, 2018.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE